WILLIAM WILLIAMS, Appellee, v. PETER TSCHANTZ, Appellant.

1. **Boundaries**: PROCEEDINGS TO ESTABLISH: GOVERNMENT SURVEY NOT CONCLUSIVE. In a proceeding to establish boundary lines and corners of adjacent lands, under chapter 8, of Laws of the Fifteenth General Assembly, where the report of the commissioner is excepted to, the court is not limited in its inquiry to the lines established by the government survey, but may hear evidence as to a subsequent survey, and the acquiescence of the parties therein, and determine the boundaries according to the actual rights of the parties. GIVEN, Justice, *dissenting*.

2. ———: ———: RECORD ON APPEAL. Where the decision of the district court in a cause is in writing, and states the reasons upon which it is based, it is proper to make such written decision a part of the record in the supreme court.

3. ———: ———: APPEAL: TRIAL DE NOVO. A proceeding to establish the boundary lines and corners of adjacent lands is not triable *de novo* in the supreme court.

4. ———: ———: EVIDENCE. In such proceeding, whether the hearing is before the commissioner or the court, evidence of "corners that have been recognized as such by the adjoining proprietors for over ten years," is, by section 3, chapter 8, of Acts of the Fifteenth General Assembly, made competent evidence.

*Appeal from Henry District Court.*—HON. CHARLES D. LEGGETT, Judge.

TUESDAY, MAY 16, 1893.

THIS is a special proceeding, by which it is sought to establish the corners and boundaries of certain real estate owned by the parties. A commissioner was appointed with the consent of the parties. The commissioner filed his report, and the appellant excepted to the same, and the court, after the introduction of evidence by the respective parties, entered an order affirming the report, from which order the defendant, Tschantz, appeals.—*Affirmed.*

· *W. S. Withrow*, for appellant.

*Leggett & McKemey*, for appellee.

ROTHROCK, J.—I. The proceeding is under chapter 8 of the Acts of the Fifteenth General Assembly, and no complaint is made as to the application

1. BOUNDARIES: proceedings to establish: government survey not conclusive.

for the appointment of the commissioner. It appears from the answer of the appellant that he concurred with the plaintiff in the request that a commissioner should be appointed, and by his exceptions to the report of the commissioner it was claimed that the line was incorrectly established by the commissioner, and it was prayed that the report be disapproved, and that the "court hear testimony that the true line dividing said sections may be fixed, and defendant freed from further annoyance and loss." In pursuance of this demand, the court did hear the testimony of a large number of witnesses introduced by the respective parties, and made an order establishing the boundary line in accord with the report of the commissioner.

The first exception taken to the proceeding by the defendant was an exception to a reply to the exceptions to the report filed by the defendant. This reply was filed at the close of the introduction of the defendant's evidence in chief. The reply was to the effect that the

true line was the same as that reported by the commissioner, because the same was surveyed and established by the county surveyor at the instance of the appellant and other parties in interest, and that said survey had been maintained and acquiesced in by the defendant and the other parties in interest for more than ten years by setting fences and making other improvements on the lines of that survey. That survey was made more than ten years before the commencement of this proceeding.

The ground of the objection to this reply, and to the evidence introduced to sustain its averments, is that it introduced a new element in the case, and that no such issue was involved in the proceeding, and that the only purpose of this proceeding is to ascertain where the original government lines and corners were located. In other words, it is claimed that where, in a proceeding like this, it appears from the evidence that the original government corners and lines have been legally changed by adverse possession, or by the acts and acquiescence of adjoining owners, the court must limit its inquiry to the proper location of the government lines and corners. It is apparent that such an inquiry would determine no right. The special proceedings would be a mere farce. It would be the finding of a fact which would in no manner determine the rights of the parties. It was no error to permit the reply to the exceptions to be filed. Indeed, no reply was necessary. The defendant requested the court to hear testimony and fix the true line. It was a request, not to hear a moot case, which would determine no right, but to take evidence, and determine the rights of the parties; and it was competent for the court to make a finding independent of that made by the commissioner, and especially is this so where the evidence is received at the request of the parties, as was done in this case.

II. The court filed its decision in writing, which was as follows:

"The evidence seems to me to show that the corner as established by Mr. George C. Van Allen, as county surveyor, in 1864, is the original corner described in the field notes of the United States government survey. But it is also shown, particularly by the additional evidence offered on the second hearing, that the adjoining proprietors, including Mr. Tschantz, acquiesced in the subsequent survey which was made by Mr. Mann when he was county surveyor, and that they bought and sold, and set their fences and other improvements, on the lines of that survey. To permit any of them to insist upon the Van Allen survey now seems to my mind contrary to the intention of the statute as interpreted by the supreme court in *Davis v. Curtis*, 68 Iowa, 66."

2. ——: ——: record on appeal.

A motion was filed in this court to strike the decision or opinion from the abstract. The motion will be overruled. It is always desirable upon an examination of an appeal that this court should be advised of the reasoning upon which the trial court proceeded in determining a case.

III. This appeal is not triable anew in this court, and the evidence fully sustains the finding that the defendant was precluded from questioning what was known as the "Mann survey," both by his acquiescence therein and by reason of the lapse of time.

3. ——: ——: appeal: trial de novo.

IV. And in our opinion the court correctly construed the case of *Davis v. Curtis*, 68 Iowa, 66. It is there held that where it appears that when corners are found which have been recognized and acquiesced in by the adjoining proprietors for ten years, corners should not be established else-

4. ——: ——: evidence.

where. In the case at bar that fact was found by the court upon sufficient evidence, and the appellant could not rightfully object to the evidence, because, whether the hearing is before the commissioner or the court, evidence of "corners that have been recognized as such by the adjoining proprietors for over ten years" is by the statute made competent evidence. Section 4509, McClain's Code.

The judgment and order of the district court are AFFIRMED.

GIVEN, J. *(dissenting).*—I can not concur in the conclusion that questions of title by adverse possession or occupancy may be tried in this proceeding. It seems to me that the necessity for, and the language and purpose of, chapter 8, Acts of the Fifteenth General Assembly, under which this proceeding is had, forbids such a conclusion. I am clearly of the opinion that the sole purpose of that chapter is the permanent establishment of corners and boundaries to lands, and not the settlement of titles based upon any other facts. The provisions of law for settling titles based upon adverse possession or occupancy were ample. Such titles are not necessarily dependent upon, but often independent of, the true corners and boundaries, and rest upon questions of facts which it is the peculiar province of juries to determine. If we recall how the mythical John Doe and Richard Roe used to figure in the search for lost corners and boundaries, we will see something of the necessity of such a law as I maintain said chapter to be.

The basis of all surveys of lands in this state is the government survey. The lapse of time and improvement of the country has and will continue to obscure and destroy the monuments that mark these and later legal surveys. The preservation of these corners and boundaries is a matter of great importance, yet without

a statute it could only be done by tedious and expensive litigation. The necessity for a plain, speedy, and inexpensive proceeding by which lost corners and boundaries can be established and perpetuated is beyond question. Chapter 8, as I construe it, meets this necessity. Under section 1, adjoining owners may, by agreeing upon a survey, and recording the plat thereof, permanently establish their corners and boundaries. Under the sections following, if they do not so agree, this proceeding may be had to permanently establish corners and boundaries that "are lost, destroyed, or are in dispute." With their corners and boundaries permanently and legally established, there is no room for further dispute as to rights resting thereon. The skill of the surveyor, rather than the judgment of courts and juries, is required in relocating lost corners and boundaries; hence the provision for appointing a commission of one or more surveyors. If it was a question of occupancy, the judgment of a court and jury, rather than the skill of the surveyor, would be required. Lost corners are relocated by measurements from recognized points; hence the commissioners are authorized to take evidence of persons able to identify any original government corner, or other legally established corner or corners, that have been recognized as such by the adjoining proprietors for over ten years. Thus it is that the surveyor gets his starting points from which to relocate the lost corner. If a government corner is found, that is controlling; if not, then any legally established corner, or corner that has been acquiesced in as such for over ten years. I fail to discern in all this how a question of adverse possession or occupancy is involved.

I would hesitate to dissent from the conclusion of the majority upon my own reasoning, but I am confirmed in my conclusion by former decisions of this court. In *Gates v. Brooks*, 59 Iowa, 510, the dispute

was substantially as in this case. The constitutionality of the law was questioned upon the grounds that it denied the right of trial by jury, and deprived the party of property without due process of law. In speaking of the nature of the proceedings, the court said: "The proceeding contemplated is a summary proceeding designed to determine and locate the true boundary line between landowners, without any issue made in court or trial by jury." After stating that there was no question of title, that it was only an attempt between the parties to apply their respective deeds to the face of the earth, and that defendant claimed the land in controversy on condition that it was within section 15, the court adds: "We find, it is true, some intimation that they claimed it absolutely by adverse possession. But with such claim we have nothing to do in this proceeding. Such a claim, if it is valid, is independent of the true location of the section line. We have to do with nothing except the conditional claim, which is dependent wholly upon the true location of the section line." In *Smith v. Scoles*, 65 Iowa, 733, the question was as to the sufficiency of the petition. This court held that where the dispute did not pertain to the question of original boundaries, but to the question of boundaries as determined by the alleged adverse possession of one of the parties, a commission can not properly be appointed. "Where the question in dispute is that of adverse possession, either party has a right to a jury." In *Mitchell v. Wilson*, 70 Iowa, 332, it was held that the filing of a supplemental pleading similar to the reply filed in this case was unnecessary to admit the evidence, and the rule that the question of adverse possession can not be considered and determined in this kind of proceeding is recognized and followed. *King v. Brigham*, 31 Pac. Rep. (Ore.) 601, is a well considered case, and so directly in point as to be entitled to consideration. The holding on this question is suffi-

ciently stated in the head-note thus: "1. Act, 1887, giving to court of equity jurisdiction to try cases where a dispute exists between owners of adjoining lands concerning the boundaries thereof, confers on such courts authority to ascertain the true boundary lines between adjacent estates which have become confused or uncertain, but such authority can not be extended to the determination of title."

The learned judge of the district court seems to have rested his conclusion upon *Davis v. Curtis*, 68 Iowa, 66, and counsel for the appellee strongly urge that case as supporting the conclusion. There certainly are expressions found in that opinion that seem to support the conclusion of the lower court, but a careful examination of the case, in the light of the questions presented and of the statute, leads me to a different view. The dispute there, as here, was the true location of the lost section corner. In 1886 County Surveyor Blakeslee had relocated that corner as claimed by the defendants and adjoining proprietors, and the public had recognized it for many years, and improved by roads, fences, buildings, etc. Two reports were made, the majority fixing the corner as claimed by plaintiffs, the minority as established by Blakeslee, which was as claimed by defendants. The lower court approved the majority report, and this court reversed, saying: "Our conclusion is that the court should have held that the Blakeslee corner was the true one." The Blakeslee survey, and the long recognition of it, warranted the conclusion that it marked the true corner. The evidence of occupancy and recognition was not considered for any other purpose than to relocate the lost corner. It was claimed that, if defendants had "open, adverse possession under color of title or claim of right, they can hold the land without regard to the location of the corner." The court says: "Such a construction of the statute under which this proceeding

is had, instead of simplifying these controversies about boundary lines which have always been a source of needless litigation, would make the statute a means of oppression." It is further said that if the proceeding "determines no right, but merely the abstract question as to where the corner was established by the government survey, the statute is of no avail whatever." This is certainly true as to settling rights by adverse possession, and that is what is meant. It is available for relocating lost corners and boundaries upon which important interests may depend. As showing that the question under consideration was not decided as claimed in that case, we quote the following: "We incline to think that it was not the intention of the legislature to impose upon the commissioners the trial of the question of adverse possession to lands, and that, when they find no marked government corner, but do find one that has been acquiesced in by adjoining proprietors for ten years, they should report that fact to the court, and it should be an end of the proceedings." It is further said: "We are clearly of the opinion that the only evidence of a marked corner was that established by the Blakeslee survey, and we are unwilling to allow the plaintiffs, upon this record to establish a corner elsewhere, which, if held to be the true corner, would produce so serious results as the making and improving of new roads, the destruction of hedges, the removal of fences and buildings."

*Doolittle v. Bailey*, 85 Iowa 398, was a proceeding to establish a lost section corner. Defendants pleaded acquiescence in the point claimed by them and the statute of limitations. The commissioner recommended the point claimed by plaintiffs. The court rejected the report, and established the corner as claimed by the defendants. The questions considered were whether there had been acquiescence for over ten years, the statute of limitations, and whether the court

erred in deciding contrary to recommendation, and in not re-referring the matter. The court says: "Regardless of the questions of acquiescence and of the statute of limitations, we think the decision of the court was fully justified by the evidence. In this case the question to be determined is not, where the government corner ought to have been located, but where was it in fact located? Once found, or the place of its location identified, it must control, regardless of the fact that the actual location of the corner may result in deflecting the section line from a straight course between government corners located east and west of said supposed lost corner. This proceeding is not instituted for the purpose of straightening lines, thereby removing unsightly crooks in roads, no matter how desirable such a result might be, but it is to ascertain the location in fact of the government corner." It is further said: "We have no difficulty in finding from it [the evidence] that the corner in controversy, as established by the government survey, was at the place contended for by defendants." That was the place fixed by the court, and its judgment was affirmed.

In *Davis v. Curtis*, 68 Iowa, 66, as in this case, the lower court fixed a point other than that established by the government survey as the corner, and the case was reversed, and the corner re-established where it was found to have been established by the original survey. It is said that to limit the inquiry to the proper location of the government lines and corners would determine no right, and that the special proceeding would be a mere farce. I do not so view it. The proceeding may be had as to any lost, destroyed, or disputed corner and boundary, whether established by government or other legal survey. It often is a matter of importance to adjoining owners to know where the true corners and boundaries of their lands are, as their rights depend upon them. Neither may claim anything by adverse

possession or occupancy, yet have important rights depending upon the re-establishment of a lost corner. It is certainly not an empty proceeding, a farce, to determine so important a matter as the true location of a lost corner and boundary to land. By this proceeding the true corners and boundaries are established, and, if either party claims rights beyond that boundary, by virtue of adverse possession or otherwise, let him go to the courts of law, where his rights can be passed upon as provided in the constitution, namely, by a jury.