# IN THE COURT OF APPEALS OF IOWA

No. 24-1522
Filed July 2, 2025

**JOSEPH CROSSLEY, Individually and as Trustee of the JOSEPH E. CROSSLEY REVOCABLE TRUST,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**MARK WILLIAM KELLNER,**
        Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Humboldt County, Kurt Wilke, Judge.


A civil defendant appeals, and the plaintiff cross-appeals, from the district court's finding of a boundary by acquiescence and its rulings on a trespass claim and admissibility of witness testimony. **AFFIRMED ON APPEAL AND CROSS-APPEAL.**


James L. Lauer (argued) of Dotson, Guenther, Christian & Lauer, Algona, for appellant/cross-appellee.

Neven J. Conrad (argued) of Conrad Law Firm, Fort Dodge, for appellee/cross-appellant.


Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

This appeal concerns a property dispute between two adjoining landowners, Joseph Crossley and Mark Kellner, focused on fence line acquiescence. Crossley filed a petition alleging trespass and boundary by acquiescence against Kellner. Kellner appeals the finding of boundary by acquiescence, and Crossley cross-appeals the directed verdict for the trespass claim and evidentiary rulings. We affirm on the appeal and cross-appeal.

## I.    Background Facts and Proceedings

The disputed 965-foot boundary is best described by a trial exhibit depicting a 2022 aerial view of Crossley's property from the Humboldt County Assessor:



Crossley owns parcel 0710200007 (Crossley land) to the south of the fence and property line in question, which is highlighted in the trial exhibit. Kellner owns parcels 0703400006 and 0703400007 (Kellner land) to the north. Kellner's home for thirty years as of trial is on parcel 0703400008 (Kellner homesite), which is northeast of the Crossley land, and this property line is not in dispute. The east-west running fence spans the entire length of Crossley land's northern boundary, but only the western 965-foot stretch of fence—designated by the two annotated black "X's" in the exhibit—is in dispute because Kellner agreed that the eastern portion of the fence "that is beyond th[e] 965 feet should remain as it is."

Immediately before Kellner acquired the land to the west of the Kellner homesite from his parents in 2018, a survey was conducted to determine the correct boundary of the Kellner land. The survey results showed the legal boundary between the Kellner and Crossley properties was south of the then-existing fence—meaning that the fence was not on the boundary of the properties and there was "ten f[ee]t on the one end and fifteen on the other end" of Kellner land extending south of the fence. It's not clear who erected the fence, but the fence has separated the neighboring properties since at least the 1940s. It's also not clear if the predecessors in interest intended the fence to be a boundary fence separating the two properties or merely a barrier fence for livestock on the Kellner land. Livestock raised on the Crossley land grazed right up to the fence line (encroaching onto the Kellner land), and livestock raised on the Kellner land never grazed south of the fence line.

The terrain around the 965-foot disputed portion of the fence is bordered by the Des Moines River to the west with dense wooded timber areas and bogs along

both sides of the fence. The bog ground is prone to flooding, leaving behind debris, and was overgrown in areas with dense brush, trees, and vegetation. And the fence line along the bog ground was in disrepair. The undisputed eastern portion of the fence between the Kellner homesite and northeastern portion of the Crossley land is cropland to which crops extended to the fence line. This fence line—that was part of the same fence as on the disputed boundary—follows the terrain and does not precisely follow the surveyed boundary line.

Kellner removed the portion of the fence in the bog-ground area that was on the southern edge of the Kellner land in 2018 after the new survey markers indicated the Kellner land extended beyond the fence line. He then constructed a new fence on the bog ground that ran along the southern border of the Kellner land, but he did not alter the original southern fence line of the Kellner homesite. Kellner testified it cost him $30,000 to remove trees, dig a drainage channel, pick up brush, and install the new fence.

Crossley filed a petition against Kellner in 2023 alleging trespass and boundary by acquiescence. Both parties moved for summary judgment, and the court denied both motions. At the bench trial, the court permitted expert testimony from the surveyor who supervised the 2018 Kellner land survey and sustained Kellner's objection to Crossley's son testifying about the cost to replace the fence because he was not an expert. The court also granted Kellner's motion for directed verdict on the trespass claim but denied it as to boundary by acquiescence.

In its post-trial ruling, the court noted the consecutive ten-year statutory period was satisfied and that, because Kellner acquiesced to the fence as a border between the Kellner homesite and Crossley land, he acquiesced to the same fence

as a border to the west between the Kellner land and Crossley land. *See* Iowa Code § 650.14 (2023). Crossley wasn't awarded any damages, and Kellner was instructed by the court to "remove at his costs the new fence which he constructed through the bog land. If [Kellner] desires to construct a new fence he shall do so in line with the existing fence through the cropland." The court also issued a subsequent order appointing a surveyor "to survey the original fence line between the two properties including the area where the original fence was removed" at Kellner's expense. Kellner appeals the finding of a boundary by acquiescence. And Crossley cross-appeals the directed verdict for the trespass claim and rulings on witness testimony admissibility.

## II.     Standards of Review

"[O]ur appellate standard of review of an acquiescence claim is statutorily defined as correction of errors at law." *Albert v. Conger*, 886 N.W.2d 877, 879 (Iowa Ct. App. 2016). We therefore defer to findings of fact by the trial court, which are binding on us if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a); *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 804 (Iowa 1994).

We also review the ruling of a motion for directed verdict for correction of errors at law. *Mensink v. Am. Grain*, 564 N.W.2d 376, 379 (Iowa 1997). We, like the district court, view evidence in the light most favorable to the nonmoving party to determine whether a fact question was generated. *Id.* And when "no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999).

"We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion." *Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). "A trial court has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989).

### III.    Discussion

Kellner claims insufficient evidence supports acquiescence to the fence as a boundary, acquiescence to part of the fence south of the Kellner homesite is not acquiescence to the part of the fence south of the Kellner land, and that Crossley did not sufficiently establish a definite fence line of ascertainment. And in Crossley's appellate brief, he claims the court below erred in granting the motion for directed verdict for the trespass claim and in its evidentiary rulings regarding certain witness testimony. We address each of these arguments in turn.

### A.  Boundary by Acquiescence

A claim of boundary by acquiescence requires that both parties or their predecessors in interest "acknowledge and treat the line as the boundary" and "the acquiescence persists for ten years." *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997) (citation omitted); *see also* Iowa Code § 650.14. Acquiescence may be inferred, but the parties must treat the fence as a boundary, not merely a barrier. *Ollinger*, 562 N.W.2d at 170–71. The burden of proof is "by clear evidence." *Tewes*, 522 N.W.2d at 806. And a claimed boundary line "must be known, definite and certain" to support a successful acquiescence claim. *Mensch v. Netty*, 408 N.W.2d 383, 386 (Iowa 1987).

On our review, we find substantial evidence supports the district court's finding of a boundary by acquiescence, and we are bound by the facts found by the district court. The fence existed well beyond any ten-year period. And we agree with the district court's analysis that

> [t]he fighting issue is whether the fence, as it existed, was a border or a boundary fence. To accept [Kellner's] argument, one would have to believe that the fence crossing the cropland and the fence crossing the bog land are two separate fences. They are not. They are a linear continuation of the entire fence. [Kellner]'s acquiescence of the fence as a border through the cropland dooms his argument that somehow the continuation of the fence through the bog land is not.

While Kellner argues on appeal that the district court erred by interpreting the following interaction with counsel as a position of acquiescence, we disagree and see no error in the court clarifying Kellner's position as to the fence between the Kellner homesite and the Crossley land:

> THE COURT: Is it your client's position that the fence that— the old fence that is beyond that 965 feet should remain as it is?
> KELLNER: Yes.
> KELLNER'S COUNSEL: Yes. We're in agreement with that.
> THE COURT: You're not going to—you're not going to dispute that?
> KELLNER: No.
> KELLNER'S COUNSEL: No, your Honor.
> THE COURT: It's only that 965?
> KELLNER'S COUNSEL: Correct.
> THE COURT: So my ruling then is only limited to 965 feet. He has no objection, in other words, to, you know, the rest of that land that your client does; correct?
> CROSSLEY'S COUNSEL: Yeah. That's my understanding, he's not objecting to the rest of it.
> THE COURT: Okay.

And this interaction occurred during an exchange about boundary by acquiescence—specifically, shortly after the court asked whether Kellner seeing

the Crossley family planting crops right up to the eastern fence line was "some evidence of acquiescence."

Kellner also claims that, even if he acquiesced to the fence as a boundary south of the Kellner homesite, he did not acquiesce to the fence as a boundary south of the Kellner land because it is not a "single linear fence line," Kellner only owned the property since 2018, and "[t]here is no consistent use in farming [along the entire fence] to suggest that the same acquiescence treatment should be applied [to] any fence remnants" in the western portion of the boundary line. We reject these arguments. First, the record reflects that it was one fence, albeit not exactly linear, that spanned the entire length of the Crossley property boundary. Second, the notion that Kellner (whose parents owned the Kellner land from 1991 to 2018) not owning the property for at least ten years makes him unable to contribute to the statutory requirement of ten years for establishing a boundary by acquiescence is untrue. *See Davis v. Hansen*, 224 N.W.2d 4, 6 (Iowa 1974) (noting predecessors in interest may also establish the consecutive ten-year requirement); *see also Egli v. Troy*, 602 N.W.2d 329, 333 (Iowa 1999); *Tewes*, 522 N.W.2d at 806. And third, we are likewise not persuaded that the farming use of the Crossley land along the undisputed eastern fence line and lack of farming in the disputed area prohibits acquiescence to the entire fence line.

Kellner next argues that Crossley did not sufficiently establish a definite fence line of ascertainment. He cites that the petition only explicitly mentioned the Kellner land and did not include the boundary between the Kellner homesite and Crossley land. We recognize that boundaries should "be described in the petition as accurately as may be." *Lawrence v. Weiss*, 145 N.W. 308, 309 (Iowa 1914).

And Crossley could have more precisely described the Kellner homesite like he described the Kellner land. But this petition, in addition to all the maps and other documents exchanged during pre-trial litigation, was sufficient to put Kellner on notice. While perhaps not a model of clarity, the petition alleged there "has been a fence dividing the Kellner property and the Crossley property for several decades" and "the common boundary is the north line of [Crossley]'s property and the south line of [Kellner]'s property[,] . . . plainly marked by a fence running east-west along the property line." And the entire north boundary of Crossley's land abuts Kellner land, marked by the fence in question.

Kellner also argues the court below erred in denying his motion for summary judgment in light of last year's supreme court decision in *Sundance Land Co., LLC v. Remmark*, 8 N.W.3d 145 (Iowa 2024). But *Sundance* is not applicable here, as it answered the question of whether common ownership of adjoining parcels "can ever defeat what would otherwise be a prior boundary by acquiescence." 8 N.W.3d at 155–56. There is no indication in this record that the Kellner and Crossley land have been owned by a single common owner since the establishment of the fence line as a boundary. And *Sundance* did not otherwise displace any of the longstanding law in this area, which the district court applied below and we apply on appeal.

We last reject Kellner's notion that the original fence line before he removed it is too indefinite to determine by survey. Iowa Code section 650.1 expressly permits lawsuits to determine "the corners and boundaries . . . which are lost, destroyed, or in dispute." And the court here provided an appropriate remedy in a subsequent order for a "disinterested licensed professional land surveyor[] . . . to

locate the lost, destroyed, or disputed corners and boundaries." Iowa Code § 650.7. We find substantial evidence supports the findings of fact and a boundary by acquiescence rendered by the district court.

### B. Trespass

Crossley appeals the district court's denial of his claim for damages for trespass in which he argues Kellner trespassed when he "removed trees, rerouted drainage, and moved earth not just between the old and new fence line, but also into the Crossley's undisputed property." "The measure of damages for trespass is either the diminution of the property value caused by the encroachment or the cost to remove the encroachment." *Nichols v. City of Evansdale*, 687 N.W.2d 562, 573 (Iowa 2004). But here, damages were not proven, and Kellner only used Crossley's land as necessary to install the new fence. Crossley did not provide the court below with proof of how the land diminished in value and failed to prove how many trees were removed, the cost of removal, or how much of the bog ground was cleared out by Kellner in the fence-installation process. And Crossley even agreed that the value of the Crossley land increased after the installation of the new fence and cleanup Kellner did. We find no error in granting the motion for directed verdict after Crossley failed to provide precise damage calculations.

### C. Witness Testimony

Crossley appears to challenge two evidentiary rulings made by the district court regarding witness testimony. First, Crossley argues the court below erred in overruling his objection to the testimony of Kellner's expert witness, the surveyor who supervised the 2018 Kellner land survey. As we understand it, Crossley argues Kellner did not comply with the disclosure requirements of Iowa Rule of

Civil Procedure 1.500 regarding notice of experts. But at the time of trial, the survey was stipulated to by both parties. Kellner's counsel told the court that Crossley filed the survey at the commencement of the lawsuit and that the testimony was proper because it is "common knowledge" the surveyor would testify regarding "how he created the survey, how it occurred, and basically verifying it's him that . . . signed it." Given the standard of review, we cannot say the district court abused its discretion in permitting the expert to testify about and verify the survey Crossley knew about before the lawsuit commenced. And any error that may have resulted is harmless due to the stipulation and nature of the testimony.

Next, Crossley challenges the district court's exclusion of Crossley's son testifying about his opinion regarding costs associated with moving the new fence to its original spot. Kellner's counsel specifically objected when Crossley's son, a contractor, was asked his opinions about the cost and how much wire, posts, and time would be necessary to move the fence to the original location. And Kellner's counsel argued to the court that:

> If we're going to assert now that he is an expert in fence building, he did not give us proper notice. . . .
> . . . .
> If he's not an expert and he doesn't know what the prices are, he's just guessing. . . . [H]e's not shown me a list of itemization of what he thinks it's going to cost. None of this has been provided to us ahead of today so anything he gives us is speculation.

We discern no abuse of discretion in excluding this quasi-expert testimony. We also note that, to the extent the exclusion of this testimony hindered Crossley's burden in establishing damages for his trespass claim, any testimony regarding cost was speculative at best and likely not enough to establish concrete damages. This renders exclusion of the testimony harmless.

**IV.     Disposition**

We affirm the district court's finding of a boundary by acquiescence and reject Crossley's cross-claims.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**