H. H. STURGES, Appellee, v. C. C. VAIL, Appellant.

Counties: SELECTION OF OFFICIAL NEWSPAPER: APPEAL: APPROVAL OF
1   BOND. On appeal from the action of a board of supervisors in
    selecting an official newspaper, the auditor has authority to
    approve the appeal bond, and in the absence of a contrary
    showing the approval will be presumed to have been made
    within the time provided by statute.

Selection of official newspaper: CONTEST: HEARING: ADJOURNMENT.
2   In the selection of an official newspaper, where a contest is
    developed, the board of supervisors has no authority to adjourn
    the time of hearing to permit a publisher who has only filed
    an affidavit of his total subscription, to subsequently file a
    detailed list of his resident subscribers as required by statute,
    but should award the selection to the publisher who has com-
    plied with the law in that regard, irrespective of the question
    of circulation.

*Appeal from Crawford District Court.*— HON. Z. A.
CHURCH, Judge.

WEDNESDAY, JULY 12, 1905.

THE opinion states the case.

*Maurice O'Connor,* for appellant.

*L. E. Goodwin,* for appellee.

WEAVER, J.— The plaintiff is the proprietor of a news-
paper known as the " Charter Oak Times," and the defend-
ant is proprietor of another newspaper known as the " Ob-
server," both being published in Crawford county, Iowa.
Each of said parties applied to the board of supervisors to
have his paper selected as an " official newspaper " of the
county for the year 1904. On January 7, 1904, the board
of supervisors in regular session fixed January 13, 1904, at
one o'clock p. m., as the time for hearing and determining
the contest thus arising. At that time the plaintiff filed

a verified list of names and postoffice addresses of resident subscribers to the Charter Oak Times, as required by Code, section 441, while the defendant made no showing of his list except by affidavit as to the total number claimed by him. The board of supervisors at first voted to select the defendant's paper, but, on objections raised by plaintiff, rescinded its action, and continued the hearing until January 15, 1904. At this hearing the defendant was allowed to produce a sworn list of his subscribers, and thereupon it was again voted to select the Observer as an official paper, and to reject the plaintiff's claim for the Charter Oak Times. From this order the plaintiff appealed to the district court, which found that the action of the board in permitting the defendant to file its verified subscription list after the hearing had on January 13, 1904, was unauthorized, and therefore reversed the order made by the board, and adjudged the plaintiff entitled to the selection. From this judgment the defendant appeals.

The first question presented goes to the jurisdiction of the district court to entertain the plaintiff's appeal. At the time the final order was entered by the board of supervisors 1. COUNTIES: selection of official newspaper; appeal; approval of official bond. respecting his application the plaintiff excepted thereto, and gave notice of an appeal, a memorandum of which was entered in the record of the proceedings. Thereafter plaintiff delivered an appeal bond to the county auditor, ex officio clerk of the board, who approved it. The date of the approval is uncertain, but the presumption of regularity which attaches to all official acts, and the fact that said bond, with the transcript of proceedings, was filed in the district court by said auditor on February 6, 1904, is sufficient to sustain the conclusion that approval was made within twenty days from the date of the order appealed from. The objection to the sufficiency of the appeal to the district court, which is most relied upon by the defendant, is based upon the proposition that the auditor has no power or authority to approve an appeal bond. It is

said there is no express provision of the statute giving such
power, and that the holding of this court in *Windsor v. Polk
County,* 115 Iowa, 738, governs the question here raised.   As
to the decision referred to, we do not think it is in point.
The substance of the rule there affirmed is that, where the
statute provides for the presentation of a petition to the board
of supervisors, a mere filing of such paper with the audi-
tor is not sufficient.   The reasons which were thought
controlling under the circumstances of that case are not
applicable to a proceeding already begun and pending before
the board, of which the auditor is clerk, and of whose records
he is custodian.   The section of the Code which allows an
appeal in this kind of proceedings provides simply that it
shall be taken " as in ordinary proceedings."   Code, section
441.   Now, it is obvious that it is impossible for one who
desires to take such an appeal to follow literally the course
provided by law for an appeal from a justice of the peace
to the district court, or from the district court to the supreme
court; and in the absence of specific directions as to notice,
bond, and other requisites for invoking the appellate juris-
diction he must adopt a procedure which is analogous to,
rather than identical with, the methods employed to perfect
an appeal in ordinary actions.   For instance, Code, section
441, does not in terms provide that any bond shall be neces-
sary to perfect an appeal; but in *Starr v. Ingham,* 84 Iowa,
580, we held that, as an appeal from a justice of the peace
could only be perfected by a proper bond, such security must
be held essential to an appeal from an order of the super-
visors selecting an official paper.

In courts of record where a bond is to be given pursuant
to requirement of law or order of court, and no other pro-
vision is made for its approval, it is, we think, an invariable
rule that the clerk is the officer with whom it is to be depos-
ited and by whom it should be approved.   A justice of the
peace is his own clerk, and, acting in this clerical or minis-
terial, rather than judicial capacity, he files, and approves

bonds for appeal from judgments rendered in his court.   The board of supervisors, in passing upon a contest of this kind, acts as an inferior court or tribunal of which the auditor is clerk.   He keeps the record, is custodian of the county seal, and is depositary of all the books and files pertaining to the proceeding.   The board is in regular session only once in three months, and then perhaps only a few days at a time, while the office of the county auditor is open on every business day of the year.   To say that an appeal bond which must be perfected in twenty days must be filed with or approved by the board in open session would in many cases serve to defeat the right entirely.   Being, as already suggested, a merely clerical or ministerial duty, with which the statute does not expressly charge the board as such, and being, moreover, a duty which, under such circumstances, in ordinary actions is performed by the clerk, we think the auditor, as clerk of the tribunal from which the appeal is taken, is the proper officer to receive and approve the bond.   Such, so far as we are aware, has been the practical interpretation which has been placed upon the statute by county officers and trial courts, and the universal practice in prosecuting appeals in cases of this kind.

We may note also that the statute under which this appeal is taken makes no express requirement that the auditor shall furnish a transcript of the proceedings before the board for the use and information of the district court upon the appeal, and yet we think no one will deny that such is his duty, and that his action in that respect does not require the sanction or authorization of the board in session.   Indeed, every step and detail in this class of appeals — the bond, its form, amount, approval, time of filing, and where to be filed; the notice, if any, and on whom to be served, when to be served, and where to be returned; the transcript, by whom to be made, and when and where to be filed — are each and all matters of construction to be derived solely from the general and somewhat vague reference to " ordinary pro-

ceedings," and we think we are not unduly enlarging upon the scope and meaning of that expression in holding that the appeal is perfected within the intention of the statute when the bond is filed with and approved by the auditor.

We now turn to the appellant's exception to the ruling of the trial court that the list of subscribers to the Observer filed on January 15, 1904, was not entitled to consideration 2. SELECTION OF by the board of supervisors. The statute (sec-OFFICIAL NEWSPAPER: tion 441) provides that the selection of official contest; hear-ing; adjourn-ment. newspapers shall be made at the January session of the board in each year, and if, upon the meeting of the board, a contest is developed, a day is to be named by the board on or before which each contestant must deposit with the county auditor;

a certified statement subscribed and sworn to before some competent officer giving the names of the several post offices and the number and names of the *bona fide* yearly sub-scribers receiving the paper through each of said offices living within the county; such statements to be in sealed envelopes and opened by the county auditor upon the direc-tion of the board of supervisors; .

and the applicant who shall thus make showing of the larger list of resident subscribers becomes entitled to the selection. Acting under this provision, the board of supervisors in the present case, having ascertained that a contest existed, named January 13, 1904, at one o'clock p. m., as the time for the hearing. According to the clear and express terms of the statute, it thereupon became the duty of the parties desiring to proceed with the contest to make and file with the auditor sealed and verified lists of their resident subscribers "on or before" the time thus fixed. The plaintiff did file such a list, but the defendant contented himself with filing an affidavit stating his paper had a given number of resident yearly subscribers, but giving neither their names nor post-office addresses. Upon this showing the plaintiff, the only contestant who presented the proof which the statute requires,

was beyond all question entitled to the selection; but the board postponed further hearing for two days, at which time the defendant was permitted to produce for the first time a sworn list of his subscribers, which appeared to be slightly in excess of plaintiff's. In holding that this list was filed in time, and entitled the defendant to the selection, the board of supervisors was clearly in error, and the district court ruled correctly in reversing the order. The law, in providing that the list shall be filed " or on before " the time named by the board, and that such lists shall be sealed until opened by the auditor upon order of the board, seeks to guard the selection, so far as may be possible, from any unfairness; and to hold the board of supervisors may ignore these safeguards, and, after the contestants have made a show of hands which entitles one of them to the selection, continue the hearing and permit the loser to make for the first time the proof which by law he was required to file on or before the day first named, .is to rob the statute of all meaning and effect, and open the door to the grossest favoritism.

It may be true, as contended by counsel, that the defendant's newspaper did in fact have the larger number of subscribers. With that, under the record before us, we have nothing to do. To entitle him to the selection to which his subscription list made him eligible, it was his duty to file the required verified list on or before the day named for the hearing, January 13, 1904. This he did not do, and was therefore in no position to contest the selection of the plaintiff. It follows that the judgment of the district court was right, and is affirmed.— *Affirmed.*